### McGRAW *v.* MUMA.

CANCELLATION OF INSTRUMENTS—DEEDS—COMPETENCY—MISTAKE.
Under evidence that deeds were executed by a mother to her daughter, of all her real property, reserving only a life estate, while the mind of the grantor was enfeebled, and while she was in a condition that rendered her, to a certain extent, incompetent to understand business matters, and upon proof tending to show that the grantor had no intention of parting with title to the property, but failed to appreciate the legal effect of the conveyances, which was not fully explained to her, a decree canceling the deeds on the ground of mistake is warranted.

Appeal from Lapeer; Law, J., presiding. Submitted June 13, 1910. (Docket No. 46.) Decided December 30, 1910.

Bill by Bridget McGraw, by George I. Lister, her guardian, against Bridget Muma, to set aside two deeds. From a decree for complainant, defendant appeals. Affirmed.

*B. F. Reed*, for appellant.
*Geer, Williams & Halpin*, for appellee.

OSTRANDER, J.  In this case the bill of complaint is filed by a mother, by her guardian, who asks for a decree setting aside and declaring to be void two certain deeds of real estate which she executed and delivered to her daughter and only child, reserving a life interest in herself. No consideration was paid by the daughter, and the reason asserted for cancellation of the instruments is that on the day of their execution, July 16, 1908, complainant, by reason of ill health and mental derangement, was wholly incompetent to transact any business whatever or of knowing or understanding the legal effect of the deeds, and that said deeds were executed and delivered at the earnest solicitation of her daughter, who is not, however, charged with having any knowledge of this alleged condition of her mother.  In September, 1908, a reconveyance was asked for by complainant and by her guardian, and was refused.  Complainant is more than 70 years of age.

The answer denies that the mother was solicited or influenced to make the conveyances, denies that the mother was incompetent, and that she did not understand the legal effect of the transaction and of the instruments.  It is alleged that in making these conveyances the mother was carrying out an intention which she had for a long time had and which she had expressed, and avers generally that, if the life estate reserved is insufficient for the wants of the mother, the daughter is ready and willing to furnish the means for her care and comfort.

Considerable testimony was taken at the hearing, and, when it was concluded, the circuit judge who heard the case considered and filed a written decision concerning two questions.  As to the competency of the complainant, he finds that there is no direct testimony tending to show that her actual mental condition on the very day the instruments were drawn was such as to render her incompetent to make them or to understand the nature of the act. The mother was a witness in her own behalf and the daughter gave her testimony, and the circuit judge had,

what is usually an advantage in cases of this nature, the opportunity of seeing and hearing the witnesses.

We have read the record with some care, and reach the conclusion which was expressed by the circuit judge, and we also agree with him in saying that:

"If her mental condition on that day was no different than it was both before and after that time, I should be constrained to find her mentally incompetent to make the deeds in question. There is testimony tending strongly to show it not reasonably probable that her mental condition was any better on July 16, 1908, than it was before that time or than it has been since."

He did not, however, find as a fact that she was mentally incompetent on July 16, 1908. The other question considered relates to the intention of complainant in making any conveyance of the property; it being found as a matter of fact that she never desired or intended to sign any paper except one which would leave both the title and use of the property in herself so long as she lived, and that she gave her assent to the instruments which were executed under misapprehension of their legal effect. The principle applied to these facts as warranting a decree setting aside the deeds is that—

"If an agreement or written instrument or other transaction expresses the thought and intention which the parties had at the time, and in the act of concluding it, no relief, affirmative or defensive, will be granted with respect to it upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied or expressed, even though it should be incontestably proved that their intention would have been different if they had been correctly informed as to the law."

"If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation to the same extent as if the failure of the writing

to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument." 2 Pomeroy's Equity Jurisprudence, §§ 843, 845.

It is not important to set out the testimony in this opinion. On or about 10 days after the deeds were executed, the complainant manifested unmistakable evidences of mental derangement. Thereafter defendant asserted that her mother was insane, and sought to have her sent to an asylum for the insane. An investigation made by the supervisor of the township convinced him that complainant was not insane, but was not competent to take care of herself or her property. Defendant then instituted proceedings which resulted in the appointment of a guardian. We are satisfied that, while the term insanity may not describe the mental condition of complainant when she executed the conveyances in question, she was nevertheless in a condition which demanded that the significance of her act should be fully explained to her, and that it was not explained. We do not intimate that the notary who prepared the instruments was in fault. He was not a lawyer. We are satisfied that the circuit judge rightly concluded that she did not intend to pass the title to her land during her lifetime, and that the effect of the conveyances, which pass the title, but reserve the life estate, was not understood by her.

The decree is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.